# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELINDA JO GERMANN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-17-301-CG |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Melinda Jo Germann brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 11, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on March 10, 2012, alleging disability beginning March 7, 2012. R. 143-48, 177. Following denial of her application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on May 13, 2014. R. 35-77, 78-86, 90-92. In addition to Plaintiff, both a

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

vocational expert ("VE") and a medical expert ("ME") testified at the hearing. R. 35-77. The ALJ issued an unfavorable decision on July 15, 2015. R. 11-34.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 7, 2012, the alleged disability-onset date. R. 16. At step two, the ALJ determined that Plaintiff had the severe impairments of rheumatoid arthritis, fibromyalgia, and asthma, and that Plaintiff's depressive disorder was nonsevere. R. 16-20. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 20-21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 21-27. The ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) in that [Plaintiff] is able to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk the total of six hours throughout an eight-hour workday; and, sit for the total of six hours throughout an eight-hour workday. [Plaintiff] is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes or scaffolds. [Plaintiff] is able to perform frequent overhead reaching with her right dominant hand. [Plaintiff] is able to perform frequent bilateral handling, fingering, feeling and gripping. [Plaintiff] must avoid more than frequent or concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and poor ventilation.

R. 21.

At step four, the ALJ considered the VE's hearing testimony and found that Plaintiff was able to perform her past relevant work as an appointment clerk (sedentary,

semiskilled), an insurance clerk (sedentary, semiskilled), and a unit clerk (light, semiskilled). R. 27-28; *see* 20 C.F.R. § 404.1560(b)(1), (2).

The ALJ therefore determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R 28; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), .1560(b)(3). Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-5; *see* 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability

cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

In this action, Plaintiff challenges the ALJ's RFC determination and the ALJ's evaluation of Plaintiff's subjective complaints. *See* Pl.'s Br. (Doc. No. 15) at 20-33.

I. WHETHER THE ALJ'S RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND APPLICATION OF PROPER LEGAL STANDARDS

   A. *Plaintiff's Daily Activities*

First, Plaintiff argues that the ALJ relied upon an "overly selective interpretation" of Plaintiff's daily activities. Pl.'s Br. at 22. According to Plaintiff, the ALJ disregarded the portions of Plaintiff's reported daily activities that did not support her decision. *See id.* at 22-24.

Although Plaintiff complains that aspects of Plaintiff's accounting of her activities are not specifically mentioned in the written decision, the ALJ demonstrates therein that she did consider the relevant evidence and testimony, and an ALJ is not required to specifically recite every item of evidence regarding a claimant's limitations in the written decision. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."); R. 16-20, 22-27. As part of her RFC findings, the ALJ discussed in detail the activities that comprised Plaintiff's daily routine, as reported by Plaintiff and by others acquainted with Plaintiff. R. 22-24. Many of Plaintiff's self-reported activities cited by the ALJ are consistent with the conclusion that Plaintiff would

4

be able to work within the confines of the ALJ's RFC determination. *See, e.g.*, R. 23 (discussion of Plaintiff's testimony that she was able to drive and to use a computer with some limitations), 24 (discussion of reports that Plaintiff performed light housework, driving, shopping, water exercise, and socializing).

Further, while "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity," Plaintiff's own characterization of her activities shows that they were far from "sporadic" and not "minimal." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (alteration and internal quotation marks omitted); *see* R. 203-10; *cf. Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (upholding ALJ's finding that the claimant's "daily activities did not indicate significant limitations" where claimant stated that she was able to drive, shop, handle finances, garden, visit friends, and go out to eat). The ALJ noted Plaintiff's reports that she handles her own personal care, helps care for a pet, prepares simple meals, does laundry and housework with some help, and spends time with others. In addition, the ALJ considered evidence of conditions on these activities. *See, e.g.*, R. 22-23 (noting Plaintiff's testimony regarding use of a walker and cane), 23 (noting Plaintiff's testimony that "she has four out of seven less productive days when she does not do anything"). Plaintiff has not shown that reversal is warranted on this basis.

### B. *Testimony of the Medical Expert*

Next, Plaintiff argues that the ALJ erred in relying upon the hearing testimony of medical expert Kweli Amusa, MD, in formulating the RFC. *See* Pl.'s Br. at 24-26; R. 25-26 (ALJ giving Dr. Amusa's findings "substantial weight"); R. 42-55.

5

An ALJ generally may request and consider opinions from an ME "on the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(e)(2)(iii) (2015). An ME is "an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion." *Richardson v. Perales*, 402 U.S. 389, 396 (1971). The ME serves as "a neutral adviser," "used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner." *Id.* at 408. The ALJ is required to evaluate an ME's opinions, including those regarding a claimant's RFC, in the same manner the ALJ would evaluate other medical opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii); SSR 96-6p, 1996 WL 374180, at *2-3, *4 (July 2, 1996).

At the administrative hearing, Dr. Amusa testified at length regarding her review of the medical evidence and her opinion as to Plaintiff's RFC. R. 46-47 (testifying that Plaintiff retained an RFC that was largely identical to the RFC ultimately found by the ALJ). Plaintiff contends that Dr. Amusa's summary of the evidence "acknowledged relatively few" of Plaintiff's complaints of pain and/or fatigue to her physicians and the physicians' findings of decreased mobility, tenderness, and swelling. Pl.'s Br. at 24. But Dr. Amusa did note instances where the record showed abnormal test results, decreased range of motion, tenderness, and mild swelling, and this testimony was recited by the ALJ. R. 25, 44. And Dr. Amusa's testimony that Plaintiff "frequently complains of pain in multiple locations" was specifically noted by the ALJ. R. 25, 48-50.

Plaintiff also takes exception to a factual error in Dr. Amusa's testimony. In a September 2012 treatment note, one of Plaintiff's physicians reported Plaintiff's statement that she used to travel and go hiking, camping, and scuba diving but now has stopped. R.

6

399. Dr. Amusa testified that Plaintiff "apparently . . . does have some good days," citing the physician's report and stating, "She's traveling, hiking, camping, scuba diving." R. 51. The ALJ included this portion of Dr. Amusa's testimony in her general summary but did not otherwise address it. R. 25.

Any error here is harmless. The written decision makes clear that the ALJ did not understand Plaintiff to be presently hiking, camping, or scuba diving. *See* R. 17 (ALJ characterizing the relevant treatment note as showing decreased range of motion and tenderness), 22-23 (ALJ discussing Plaintiff's testimony that she was unable to work, had started using a walker, and was experiencing worsening vision). And Dr. Amusa's actual takeaway from her erroneous understanding of the record—"[A]pparently, she does have some good days."—is at least partially consistent with Plaintiff's own testimony that some days were not as bad as others and that she averaged four bad days in a week. R. 51; *see* R. 66. Thus, Dr. Amusa's error does not materially undermine the ALJ's RFC finding or warrant reversal. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162-63 (10th Cir. 2012); *see also id.* at 1167 ("[C]ommon sense, not technical perfection, is our guide.").

Finally, Plaintiff contends that the ALJ erred in relying upon Dr. Amusa's testimony regarding Plaintiff's fibromyalgia. As summarized by the ALJ, Dr. Amusa testified that Plaintiff "has the diagnosis of fibromyalgia made in the 1990's, but that there is no current diagnosis and the current evidence does not well document this." R. 25; *see* R. 16-17, 45. The ALJ further explained:

> Upon questioning by [Plaintiff's] attorney, Dr. Amusa testified that the diagnosis of fibromyalgia was made many years ago; however, she found no objective support for the diagnosis on current physical examinations. Dr.

7

> Amusa testified [Plaintiff's] physical examinations showed findings of tenderness in multiple locations, but not always accompanied by decreased ranges of motion in these same areas of tenderness.

R. 25; *see* R. 47-48.

Plaintiff objects that more recent treatment records from Plaintiff's rheumatologist noted a diagnosis of fibromyalgia accompanied by "numerous areas of pain and tenderness," in contrast to Dr. Amusa's opinion. Pl.'s Br. 25-26. But the ALJ expressly discussed these later records, including at least one reference to fibromyalgia, in the written decision. R. 17-18, 24. Further, the ALJ found Plaintiff's fibromyalgia to be a *current* severe impairment, "significantly limit[ing]" Plaintiff's ability to work, and assessed the impairment for Listings purposes at step three as well as in the RFC determination. 20 C.F.R. § 404.1520(c); *see* R. 16-19, 21 (evaluating Plaintiff's fibromyalgia pursuant to Social Security Ruling 12-2p, 2012 WL 3104869 (July 25, 2012)). Regardless of Dr. Amusa's testimony, the ALJ evidently considered Plaintiff to suffer from fibromyalgia during the relevant time period, and Plaintiff has not shown any prejudicial error in this respect. *Cf. Harris v. Astrue*, 496 F. App'x 816, 819 n.1 (10th Cir. 2012) ("The burden to show prejudicial error on appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

### C. Plaintiff's Mental Impairment

At step two of the sequential analysis, the ALJ examined Plaintiff's mental impairment in light of the four functional areas emphasized in the relevant mental-disorder Listings, which are known as the "paragraph B" criteria. R. 19-20; *see* Listing 12.00(C). Finding that Plaintiff had no limitation in activities of daily living or social functioning,

8

mild limitation in concentration, persistence, or pace, and no extended episodes of decompensation, the ALJ determined that Plaintiff's mental impairment was nonsevere. R. 19-20 (citing 20 C.F.R. § 404.1520a (2015)). Plaintiff does not directly challenge this determination but asserts that the ALJ "simply reiterated" this step-two finding when assessing the RFC and therefore "failed to adequately consider the impact" of Plaintiff's mental impairment, in contravention of *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013). Pl.'s Br. at 26.

The Tenth Circuit in *Wells* explained that when assessing a claimant's RFC, an ALJ must "consider the combined effect of *all* medically determinable impairments, whether severe or not." *Wells*, 727 F.3d at 1069; *see* 20 C.F.R. § 404.1545(a)(2). In that case, the ALJ had determined at step two that the Plaintiff's mental impairments were not severe and had stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Wells*, 727 F.3d at 1069 (alterations and internal quotation marks omitted). Noting that this statement "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the Tenth Circuit held that "the Commissioner's regulations demand a more thorough analysis" for the RFC determination. *Id.* at 1069, 1071.

Here, the ALJ's decision does not reflect the type of conflation of the step-two and step-four determinations criticized in *Wells*. First, the ALJ explicitly recognized the distinction in her decision:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental

> residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following [RFC] assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis.

R. 20. Second, the ALJ's RFC discussion does not simply repeat her step-two finding, as Plaintiff alleges; the ALJ expressly considered Plaintiff's mental impairments and the relevant evidence thereon. R. 23, 26. For instance, the RFC determination notes Plaintiff's relevant testimony and assigns specific weights to the state-agency psychologists' findings (an assignment not challenged by Plaintiff). R. 26.

Accordingly, Plaintiff has not shown that the ALJ failed to "conduct[] a mental RFC assessment separate from the non-severity determination made at step two." *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (finding ALJ conducted proper RFC analysis and distinguishing *Wells* where "the ALJ did not make any ancillary statement . . . affirmatively suggesting an improper conflation of the step-two and step-four assessments" and "[a]t step four . . . discussed evidence relating to [the nonsevere impairment] and then pointedly omitted any limitation associated with that [nonsevere] impairment on the RFC"). Nor has Plaintiff shown that the ALJ failed to consider all of Plaintiff's medically determinable impairments in assessing the RFC. *See Wells*, 727 F.3d at 1069.

## II. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS

The relevant Social Security Ruling[2] required an ALJ to evaluate a claimant's symptoms—e.g., "pain, fatigue, shortness of breath, weakness, or nervousness"—according to a two-step process. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *accord* 20 C.F.R. § 404.1529(b), (c) (2015). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s)" "that could reasonably be expected to produce" the claimant's pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2. Second, if such an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects" of the claimant's symptoms "to determine the extent to which the symptoms limit the [claimant's] ability to do basic work activities." *Id.* In connection with this second step, "whenever the [claimant's] statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record." *Id.* (citing 20 C.F.R. § 404.1529(c)(4)).

The Court "normally defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *accord Wilson*, 602 F.3d at 1144 ("[W]e will not upset such determinations when supported by substantial evidence." (internal quotation marks omitted)). "However, findings as to credibility should

---

[2] Social Security Ruling 96-7p has now been replaced by Social Security Ruling 16-3p, which applies to determinations and decisions made by the SSA on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (alteration and internal quotation marks omitted).

### A. *The ALJ's Decision*

As part of the RFC determination, the ALJ described the two-step process outlined above and summarized Plaintiff's hearing testimony. R. 22-23. The ALJ then stated:

> After careful consideration of the evidence, it is found that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In the instant case, the issue is not the existence of pain and depression, but rather the degree of incapacity incurred because of the same. While [Plaintiff] complains of severe symptoms, it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree alleged. She does not appear to be experiencing progressive physical deterioration, which might be expected when there are intense and continuous symptoms. Likewise, [Plaintiff's] routine does not appear restricted by her alleged disability; but, rather by choice.

R. 23-24. The ALJ then cited Plaintiff's daily activities, the lack of any medical recommendation for her use of assistive devices, and certain opinion evidence as bases for discounting Plaintiff's credibility. R. 24-27.

### B. *The ALJ's Characterization of the Evidence*

Plaintiff objects that the ALJ erred in several ways when conducting the second step of the credibility analysis. Plaintiff contends that the ALJ erred in stating that the record contained "minimal findings in evidence" as a basis for reducing Plaintiff's credibility, because "the ALJ made no attempt to reconcile this finding with any of the numerous

12

abnormal examination findings reflecting [Plaintiff's] tenderness, reduced mobility, and/or swelling." Pl.'s Br. at 30 (citing R. 23). Similarly, Plaintiff objects to the ALJ's statement that Plaintiff "does not appear to be experiencing progressive physical deterioration," citing evidence that she believes shows such deterioration. R. 23; *see* Pl.'s Br. at 30.

For each of these challenged findings, the relevant question is not whether evidence exists that might support a contrary finding but whether there is a "mere scintilla" of supporting evidence. *Branum*, 385 F.3d at 1270 (internal quotation marks omitted); *see Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views . . . ." (alteration and internal quotation marks omitted)). The record reflects many normal or near-normal test results and treatment notes in the record. *See, e.g.*, R. 274 (March 2012 lumbar x-ray showing only mild disc narrowing and spurring), 276-81 (May 2012 consultative exam reflecting normal range of motion, tenderness but no muscle spasms, normal muscle bulk and grip strength, normal walking, and negative straight-leg raising tests), 308, 366 (state-agency psychologist finding Plaintiff's mental disorder to be nonsevere), 310, 368 (state-agency physician finding no severe physical impairments), 371 (Plaintiff reporting in November 2012 that her pain and fatigue had improved with medication). And the record reflects no medical treatment in the five-month period preceding the June 2014 hearing. *See* Def.'s Br. (Doc. No. 19) at 5; Pl.'s Reply (Doc. No. 20) at 2-3. Because there is substantial evidence supporting the challenged findings, Plaintiff has not shown reversible error in this aspect of the ALJ's credibility determination. *See Wilson*, 602 F.3d at 1144.

### C. Plaintiff's Daily Activities and Other Factors

Plaintiff next objects to the ALJ's reliance on evidence of Plaintiff's ability to engage in daily activities as a basis for discounting Plaintiff's credibility and argues that the ALJ disregarded regulatory factors that, if properly considered, would have led to a different result. *See* Pl.'s Br. at 31-33; 20 C.F.R. § 404.1529(c)(3).

The ALJ, relying primarily on Plaintiff's own reporting, accurately listed numerous activities that occurred in the course of Plaintiff's daily life, including light housework, driving, shopping, and social outings. R. 22-23, 24. The ALJ additionally observed that despite Plaintiff's testimony that she could not sit in one place for too long, Plaintiff "sat throughout the duration of the hearing that lasted well over one hour." R. 23. The ALJ also noted that despite Plaintiff's reported use of a cane and a walker, there was "no evidence of any medical basis for the use of an assistive device." R. 24 (also noting that the record showed "numerous occasions" where Plaintiff was "observed to ambulate without the need of any assistive device"). The ALJ additionally discussed, however, Plaintiff's testimony as to the pain and fatigue that accompanies her daily life, the adaptations Plaintiff had made to her previous routine, and the assistance she receives from her husband in carrying out activities. R. 22-23, 24, 25. The ALJ ultimately concluded that Plaintiff "is independent in her personal care" and that Plaintiff's activities "are not consistent with the extent of [her] allegedly disabling impairments, which bears strongly upon the issue of credibility." R. 24.

Taking this aspect of the decision as a whole, it cannot be said that the ALJ improperly ignored evidence favorable to Plaintiff or failed to properly consider the

14

relevant factors. While not reciting every available item of related evidence, the ALJ provided an "objectively reasonable explanation" and "closely and affirmatively" linked her credibility findings to substantial, specific evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted); *see Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (explaining that the court does not require an ALJ's credibility determination to set forth "a formalistic factor-by-factor recitation of the evidence"); *Wilson*, 602 F.3d at 1146 (noting that when the claimant's stated limitations were inconsistent with the ALJ's own observation of claimant's physical condition during the sixty-five-minute hearing, "[s]uch evidence undermines [the claimant's] claims of a *disabling* level of pain"); *cf.* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed . . . .").

Because the ALJ's credibility evaluation "was linked to specific findings of fact" and "fairly derived from the record," this evaluation was adequately supported and conducted in accordance with applicable legal standards. *White*, 287 F.3d at 910. Reversal is not warranted on this basis.

## CONCLUSION

The decision of the Commissioner is affirmed. Judgment shall issue accordingly.

ENTERED this 14th day of August, 2018.

                                               */s/ Charles B. Goodwin*
                                          CHARLES B. GOODWIN
                                          UNITED STATES MAGISTRATE JUDGE